IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Virginia B. Finnegan, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 07-405
)
Ross Township, )
)
    Defendant. )
)

AMBROSE, Chief District Judge

# OPINION
# AND
# ORDER OF COURT

Plaintiff, Virginia Finnegan ("Plaintiff" or "Finnegan"), initiated this action against her former employer, Defendant Ross Township, alleging discriminatory treatment on the basis of sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").

Pending before the Court is Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's claims in their entirety. (Docket No. 14). Plaintiff opposes Defendant's Motion. (Docket No.17). After careful consideration of the parties' submissions and for the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I. INTRODUCTION

### A. Factual Background

Unless otherwise indicated, the following material facts are undisputed.

Plaintiff was employed as Finance Director of Ross Township for approximately 11 years,

1

until her involuntary termination from employment on April 10, 2006. Plaintiff, a female, was born on May 16, 1945, and was 60 years old as of the 000date of her discharge. She was hired by Ross Township a week short of her 50th birthday and replaced another female Finance Director who had resigned. Township Manager Tom Lavorini was Plaintiff's direct supervisor. Plaintiff and Mr. Lavorini had a good relationship and worked very closely together.

In 2005, Plaintiff claims that the work product of an employee in the Finance Department, Leona Ziegler, began to deteriorate, and that she counseled Ms. Ziegler periodically about the decline in her work performance. According to Plaintiff, Ms. Ziegler decided to resign from employment in early 2006 rather than improve her work performance. Plaintiff further testified that several members of the Ross Township Board of Commissioners ("Board") called Ms. Ziegler into a meeting to find out why she had resigned from employment, and then arranged an Executive Session of the Board at which Plaintiff was questioned regarding the circumstances leading up to Ms. Ziegler's resignation. The Executive Session took place on March 20, 2006.

At one point during the March 20 session, after the Board had finished questioning Plaintiff, one of the Board members (Board Vice President Dan Kinross)[1] told Plaintiff she could leave the session. Plaintiff claims that she responded that she would like to stay because the Board was going to vote on a matter concerning her department. She recalls that Mr. Kinross replied, "No, you can leave." Plaintiff testified that, at that point, she said okay and then left. Defendant disagrees and points to deposition testimony from different commissioners indicating that Plaintiff refused to leave the meeting and that, as a result, Mr. Kinross got up and left the meeting himself. Mr. Kinross testified at his deposition that he told Plaintiff "if you're not going to leave, then I am." Docket No. 16, Ex. C (Kinross Dep.) at 40. Plaintiff remembers Mr. Kinross standing up and putting

---

[1] Plaintiff did not recall the name of the Commissioner at her deposition, but it is clear from the record that the Commissioner who asked Plaintiff to leave was Dan Kinross.

on his coat. In this regard, she stated that she was "kind of astounded . . . at his reaction specifically, because I did not think I said anything inappropriately. I thought I requested to stay. They said no you can't stay and I left." Id. at 174. Plaintiff does not recall Mr. Kinross leaving, and it was her perception that she left the room before he did. Id. at 178. Plaintiff testified that when she was told the second time that she could not stay, she considered it a direct order and left.[2]

After the March 20, 2006 meeting, Tom Lavorini, the Township Manager, suggested that Plaintiff talk to Board President Lana Mazur because he knew that Ms. Mazur or the Board was upset. Id. at 182. Plaintiff testified that she herself was upset because of the way the Board had treated her at the meeting. Id. At approximately 4:00 p.m. on or about March 23, 2006,[3] Plaintiff stopped Ms. Mazur and requested to speak to her in a public area of the Township Building between the tax office and the bathrooms. Id. at 183-85. Plaintiff stated that she asked Ms. Mazur if the Board had accomplished what they intended with Plaintiff's appearance before them at the March 20 meeting and that she told Ms. Mazur that it was demeaning for her to appear before the Board in that manner. Plaintiff testified that she told Ms. Mazur that the forum in which they had her appear was intimidating and it would have been better to sit down at a table to discuss their concerns. Plaintiff also states that she told Ms. Mazur that Ms. Ziegler had resigned so there was no point in discussing her shortcomings.[4] Plaintiff claims that she wanted Ms. Mazur to know how

---

[2] Plaintiff denies Defendant's contention that the Commissioners present at the March 20, 2006 Executive Session were in agreement that Mr. Kinross asked Plaintiff to leave the session more than once and that she refused to do so. Plaintiff also denies that the Commissioners further agreed that Mr. Kinross left the session because Plaintiff refused to do so. According to Plaintiff, the Commissioners gave different versions in their depositions and/or affidavits of the events of March 20, and also disagreed as to why Mr. Kinross left the meeting. See Pl.'s Counterstatement of Facts ¶¶ 38-39, 72-74, 76-78.

[3] Although Plaintiff testified at her deposition that she believed the date was March 24, 2006, both parties appear now to agree that the actual date was March 23.

[4] In addition to her deposition testimony, Plaintiff kept a log contemporaneous with these events in which she recorded what she alleges transpired. See Docket No. 16, Ex. B.

3

she felt, but denies that her discussion with Ms. Mazur was an argument or that voices were raised. Rather, she describes the meeting as a "fairly cordial conversation" and probably an "intense conversation" although it was not heated or loud. Pl.'s Dep. at 190-92. Ms. Mazur testified differently as to the events of March 23. Specifically, Ms. Mazur described the encounter with Plaintiff as a "confrontation" initiated by Plaintiff and stated that Plaintiff was very angry and was yelling at Ms. Mazur about Plaintiff's appearance at the March 20 Executive Session. Docket No. 16, Ex. D (Mazur Dep.) at 41-50.[5]

On March 29, 2006, Plaintiff contends that Mr. Lavorini called her into his office and told her the Board was after her job based on two reasons: (1) the events of the March 20, 2006 meeting, including her alleged refusal to leave, which were described to her as "insubordination"; and (2) Plaintiff's alleged "confrontation" with Ms. Mazur on or about March 23, 2006. Mr. Lavorini advised Plaintiff to call Ms. Mazur, Commissioner Grace Stanko, and any other Commissioners to do damage control. Plaintiff did not apologize for the events on these two occasions because she did not believe she had done anything wrong. Pl.'s Dep. at 199-200, 210.

Ms. Mazur testified that she reported the March 23 incident of alleged insubordination to the Board at an Executive Session on April 10, 2006, and that the Board discussed the incident as well as the March 20, 2006 incident. Other Commissioners also stated that, at the April 10, 2006 Executive Session, the Board discussed the termination of Plaintiff's employment based on her alleged insubordination on these two dates. Plaintiff alleges that other matters also were discussed, including possible mitigating factors and the Township's progressive discipline policy. When the regular meeting resumed later that same evening, the Board voted, by a roll call vote of

---

[5] Defendant contends that there were multiple witnesses to Plaintiff's alleged "confrontation" with Ms. Mazur, including Chief of Police Ralph Freedman. Def.'s Statement of Facts ¶¶ 44-45. Neither party, however, deposed or supplied affidavits from Chief Freedman or any other alleged witness. Id.; Pl.'s Counterstatement of Facts ¶¶44-45, 87.

5-4, to terminate Plaintiff's employment as Finance Director, effective immediately.[6]  Plaintiff ultimately was replaced in July 2006 by a 51-year old male, Wayne Jones.

Plaintiff admits she received the Ross Township Employee Handbook and, although she does not know if she read it specifically, she knew that insubordination or disrespectful conduct was one of several infractions noted in the handbook as not being permitted.  Among other things, the handbook states that "employment with Ross Township is based on mutual consent and both the employee and Ross Township have the right to terminate employment at will with or without cause or advance notice. . . ."  Docket No. 16, Ex. L. at 2, 37-38.  The handbook further states that the Township may use progressive discipline at its discretion but that the progressive steps (verbal warning, written warning, and suspension) may be bypassed "depending on the severity of the problem and the number of occurrences."  Id. at 37.  Among other things the handbook explains that "Ross Township recognizes that there are certain types of employee problems that are serious enough to justify either a suspension, or, in extreme situation[s], termination of employment, without going through the usual progressive discipline steps."  Id.  Under section 701 of the handbook, an example of a rules of conduct infraction that may result in disciplinary action, including termination, is "insubordination or other disrespectful conduct."  Id. at 31-32.

## B. Procedural History

On March 29, 2007, Plaintiff filed a Complaint against Defendant.  (Docket No. 1).  On May 31, 2007, Defendant filed its Answer to Plaintiff's Complaint.  (Docket No. 11).  On November 30, 2007, Defendant filed the instant Motion for Summary Judgment and supporting materials.  (Docket Nos. 14-16).  On January 14, 2008, Plaintiff filed a Counter Concise Statement of Material Facts,

---

[6] Commissioners Eyster, O'Brien, Kinross, Stanko, and Mazur voted in favor of terminating Plaintiff's employment, and Commissioners Mikec, Montgomery, Ferraro, and DeMarco voted against. Def.'s App'x (Docket No. 16), Ex. M.

Exhibits, and a Brief in Opposition to Defendant's Motion. (Docket Nos. 17, 19-20). Defendant filed a Reply Brief to Plaintiff's Opposition on January 29, 2008. (Docket No. 21). The Motion is now ripe for my review.

## II. **LEGAL ANALYSIS**

### A. **Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of

affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### B. Sex and Age Discrimination - Title VII, ADEA and PHRA[7]

Defendant alleges that it is entitled to summary judgment as to Plaintiff's sex and age discrimination claims because, even assuming Plaintiff could establish a *prima facie* case of discrimination, she cannot show that Defendant's reason was a pretext for discrimination. Plaintiff alleges that she was fired by Defendant because of her gender (female) and/or age (then 60) in violation of Title VII, the ADEA, and the PHRA.

Title VII prohibits employment discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a). Similarly, the ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because of such individual's age." 29 U.S.C. § 623(a). In this case, both parties agree that I should analyze Plaintiff's claims using the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, plaintiff first must establish a *prima facie* case of discrimination. If the plaintiff succeeds, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant meets this minimal burden, then the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was mere pretext for discrimination. Id. at 802; Keller v. Orix Credit Alliance,

---

[7] My analysis of Plaintiff's ADEA and Title VII claims applies equally to her age and gender discrimination claims under the PHRA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Throughout this analysis, however, the burden of proving intentional discrimination rests with the plaintiff. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

### 1. *Prima Facie* Case

Here, Defendant assumes, for purposes of summary judgment only, that Plaintiff has established a *prima facie* case of sex and age discrimination. Defendant contends, however, that Plaintiff's discrimination claims cannot survive summary judgment because Defendant has provided a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment and Plaintiff cannot point to any record evidence showing that this reason was a pretext for sex or age discrimination. For the reasons set forth below, I agree with Defendant with respect to Plaintiff's age discrimination claim, but disagree with respect to her sex discrimination claim.

### 2. Defendant's Articulated Reason

Defendant has satisfied its minimal burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff's employment – insubordination during the March 20, 2006 Executive Session and during the alleged confrontation with Commissioner Mazur on or about March 23, 2006. Courts routinely have recognized insubordination as a legitimate, nondiscriminatory reason for discharge. See, e.g., Lyles v. Phila Gas Works, 151 F. App'x 169, 171 (3d Cir. 2005); Bisbing v. Lehighton Ambulance Ass'n, Inc., 142 F. App'x 71, 74 (3d Cir. 2005); Moyer v. Kaplan Higher Educ. Corp., 413 F. Supp. 2d 522, 527 (E.D. Pa. 2006); Brown v. DB Sales, Inc., No. Civ. A. 04-1512, 2005 WL 3591533, at *7 (E.D. Pa. Dec. 29, 2005). Accordingly, the burden is on Plaintiff to offer evidence that Defendant's proffered reason is pretextual.

### 3. Pretext

"To survive summary judgment when the employer has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely or not a motivating or determining cause of the employers action." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); Doe v. C.A.R.S. Protection Plus, Inc., ___ F.3d ___, 2008 WL 2222689, at *9 (3d Cir. 2008). To discredit the employer's articulated reasons (the first method of proving pretext), the plaintiff

> need not "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond [his] prima facie case." Id. (citations omitted). The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action."

Simpson, 142 F.3d at 644 (quoting Fuentes, 32 F.3d at 764-65).

To show that discrimination was more likely than not a cause for the employer's action (the second method of proving pretext), "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that" the plaintiff's age, gender, and/or other protected trait, "was a motivating or determinative factor in the employment decision." Id. Among other things, the plaintiff may show that the employer: (1) has previously discriminated against her; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated more favorably similarly situated persons not within the protected class. Id. at 645 (citing Fuentes). The burden of proving

9

pretext is a difficult one.  Fuentes, 32 F.3d at 765.

**a. Pretext - Sex Discrimination**

In an effort to demonstrate pretext, Plaintiff offers a number of arguments as to why Defendant's reason for discharge is implausible.  Pl.'s Br. (Docket No. 19) at 2-11.  First, Plaintiff argues that Defendant's differing versions of her alleged insubordination at the March 20, 2006 Executive Session show that Defendant's reason is contradictory and unworthy of belief. Specifically, Plaintiff emphasizes that the Commissioners present at the session differed in their deposition testimony and/or affidavits "as to the amount of time after the first indication to Plaintiff that she could leave the Board meeting room, to the time of the first specific request for her to leave the meeting room, to the time when Kinross began to leave the room, and to the time when Plaintiff began to leave the room."  Id. at 5.  Plaintiff also does not believe that her actions on March 20 amounted to insubordination.

I disagree with Plaintiff that the record evidence regarding the March 20, 2006 Executive Session amounts to evidence of pretext.   For example, although there are minor discrepancies among the Commissioners' accounts of the events during the session, the Commissioners who were present at the meeting all agreed that Plaintiff was asked to leave the session more than once by Commissioner Kinross and that she did not immediately do so.  The Commissioners also were consistent in their testimony that Mr. Kinross left the meeting when Plaintiff did not do so.  The fact that the Commissioners' testimony may differ slightly as to timing, exact words, or other immaterial details is insufficient to cast doubt on Defendant's reasons.  Furthermore, the mere fact that Plaintiff disagrees that her conduct on March 20 amounted to insubordination is not evidence of pretext. See, e.g., Fatzinger v. Lehigh Valley Hosp., 130 F. Supp. 2d 674, 679 (E.D. Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff from summary judgment.") (citing Billet v. CIGNA

Corp., 940 F.2d 812, 825 (3d Cir. 1991)). It likewise is not evidence of pretext that Defendant's decision may have been wrong or mistaken. See Fuentes, 32 F.3d at 765 (the issue is not whether the employer is wise, shrewd, prudent or competent, but whether the employer acted with a discriminatory motive). As the Court of Appeals for the Third Circuit has explained, the court:

> "do[es] not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [civil rights laws] do[] not interfere. Rather, [the] inquiry is limited to whether the employer gave an honest explanation of its behavior."

Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)); see also Logan v. Countrywide Home Loans, Civil Action No. 04-5974, 2007 WL 879010, at *6 (E.D. Pa. Mar. 15, 2007) ("An employer is entitled to be hasty, ill-informed, mercurial, or just wrong in its employment decisions; what an employer may not do is base employment decisions on . . . [a] protected criterion . . . in contravention of civil rights law.").

Plaintiff's arguments in opposition to summary judgment, however, are not limited to the facts surrounding the March 20 2006 Executive Session. To the contrary, Plaintiff points to sufficient other record evidence to create a genuine issue of material fact on the pretext issue in the context of her sex discrimination claim. Significantly, I agree with Plaintiff that there is a genuine issue of fact as to whether Commissioner Mazur's version of her encounter with Plaintiff in the hallway of the Township Building on or about March 23, 2006 (the second alleged act of insubordination) is worthy of belief. As the record evidence, including Plaintiff's and Mazur's deposition testimony and Plaintiff's log, demonstrates, there is a significant factual dispute between Commissioner Mazur and Plaintiff as to what transpired on March 23. Among other things, Mazur reported to the Board, and testified in her deposition, that Plaintiff raised her voice to her in an inappropriate and insubordinate manner, while Plaintiff's testimony, if believed, demonstrates that

Plaintiff never raised her voice or otherwise acted insubordinately.

This factual dispute is material because it calls into question Ms. Mazur's credibility, honesty, and motives with respect to the account of the incident she subsequently relayed to the Board on or before April 10, 2006, ultimately leading to the 5-4 vote to terminate Plaintiff's employment. It is undisputed that the only official information the Board was given concerning the March 23 Finnegan-Mazur encounter came from Commissioner Mazur.[8] Even if the four other Commissioners who voted in favor of terminating Plaintiff's employment honestly believed she was insubordinate based on Commissioner Mazur's version of events, the entire vote is called into question if a jury were to find that Mazur herself did not honestly believe that reason. Given that the vote in favor of termination was only 5-4, a difference in Mazur's vote likely would have changed the outcome. Moreover, even if there is no evidence of pretext with respect to the first alleged incident of insubordination on March 20, 2006, the factual dispute regarding Plaintiff's subsequent encounter with Mazur is relevant because the Commissioners who voted in favor of termination testified that they took into account the <u>combination</u> of the two incidents. <u>See</u> Docket No. 16, Ex. C (Kinross Dep.) at 44-52; <u>id.</u> Ex. F (Stanko Dep.) at 29-32; <u>id.</u> Ex. H (Eyster Dep.) at 43-44; Ex. I (O'Brien Aff.) ¶¶ 6-7.[9] Indeed, Commissioner Kinross, the very Commissioner that asked Plaintiff to leave the March 20 meeting and then walked out when Plaintiff did not do so, testified that, in his opinion, it was the second incident, i.e., the alleged

---

[8] Defendant makes much of the fact that there allegedly were other witnesses to the March 23 encounter, including Police Chief Freedman, whom, according to Defendant, agree with Commissioner Mazur's version of events. Defendant's mere assertion that such witnesses may exist is not evidence sufficient to dispel the genuine issues of material fact on this issue. Moreover, Defendant's suggestion that it was Plaintiff's burden to depose Chief Freedman or other alleged witnesses in order to disprove Defendant's allegations is without merit. In short, no party chose to depose other alleged eyewitnesses; thus, such evidence simply does not exist for summary judgment purposes. Instead, I have before me Plaintiff's and Commissioner Mazur's sworn testimony regarding the alleged events. As set forth above, resolution of this "she said-she said" dispute is an issue best left for the fact-finder.

[9] Even Defendant states in its brief that "there is no question that the five to four vote to terminate was based on the consecutive insubordinate acts by the plaintiff." Def.'s Br. (Docket No. 15) at 9-10.

confrontation with Mazur, that was more harmful to Plaintiff than the first.  Id., Ex C (Kinross Dep.) at 50.

As the district court in Logan (one of the cases on which Defendant relies in support of summary judgment) explained, "it is the integrity and good faith of [the employer's] investigation – not the correctness of the results – that [the employee] must contradict." 2007 WL 879010, at *6. Commissioner Mazur's integrity and good faith, and derivatively, the integrity and good faith of the ensuing termination decision, are exactly what Plaintiff is contradicting here.[10]

In addition to the evidence discrediting Commissioner Mazur's reason for voting to terminate Plaintiff's employment, Plaintiff points to evidence that at least one similarly-situated male employee was treated more favorably than she after engaging in comparable behavior. Specifically, Plaintiff points to evidence that Township Manager Thomas Lavorini (Plaintiff's supervisor during her employment) was accused of shouting at Commissioner Stanko and/or Commissioner Mazur in a Township Building hallway in or around June 2007, but was not discharged from employment.[11]  Specifically, the same Board Members who voted on Plaintiff's discharge, voted after an Executive Session to give Lavorini a three-day suspension without pay as well as a written reprimand. Docket No. 20, Ex. A (Lavorini Dep.) at 71-73. According to Commissioner Stanko's deposition testimony, the Board did not even consider more severe discipline. Id. Ex. J (Stanko Dep.) at 22.

In addition to the fact that Lavorini was disciplined less severely for similar conduct,

---

[10] To the extent Defendant suggests that no reasonable jury could disbelieve Ms. Mazur's version of events, such suggestion is without merit. Indeed, the Unemployment Compensation Board of Review, after a hearing at which both Plaintiff and Mazur testified, found Plaintiff to be credible and Mazur not to be credible on this point. See Docket No. 20, Exs. N, O. Regardless of whether the unemployment decision is ultimately admissible at trial – a question on which I make no ruling – the decision is, at the very least, evidence that reasonable minds can differ on this issue.

[11] Plaintiff's evidence includes, inter alia, the deposition testimony of Lavorini and Stanko regarding this incident. Docket No. 20, Ex. A (Lavorini Dep.) at 68-75; Ex. J (Stanko Dep.) at 17-23.

there is also evidence that the Board informed Lavorini of the charges against him and gave him an opportunity to come before the Board to give his side of the story prior to the Board's vote. The record indicates, however, that Plaintiff was not given a similar opportunity. See, e.g., Docket No. 20, Ex. L (Mazur Dep.) at 52-57.

Defendant's argument that Mr. Lavorini's situation is not similar to Plaintiff's because Mr. Lavorini apologized for his behavior while Plaintiff did not is not persuasive at the summary judgment stage. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could view Mr. Lavorini's apology as evidence that he admittedly engaged in the behavior of which he was accused and, therefore, was even more culpable than Plaintiff. It also is not dispositive that the Lavorini incident occurred over a year after Plaintiff's discharge given the similarities between the incidents at issue and the fact that the decisionmakers were the same. The fact that no other nonunion employees or department heads were disciplined for insubordination during Plaintiff's or Mr. Lavorini's tenure with the Township makes the comparison of the two even more relevant.

In short, viewing the evidence in the light most favorable to Plaintiff, I find that a reasonable jury rationally could conclude that Defendant's proffered reason for terminating Plaintiff's employment is "unworthy of credence." I further find that Plaintiff has produced evidence that the same decisionmakers disciplined at least one similarly-situated male employee less severely than Plaintiff for similar conduct. Together, this evidence is sufficient to withstand Defendant's motion for summary judgment as to Plaintiff's sex discrimination claim.

**b. Pretext – Age Discrimination**

Plaintiff's age discrimination claim does not fare as well. Unlike her sex discrimination claim where she offered at least some evidence that a similarly-situated male employee was treated differently, Plaintiff's only evidence or argument even remotely related to age involves

14

the fact that her replacement as Finance Director, Wayne Jones, was 51 years old. The mere fact that Plaintiff was replaced by a younger individual, however, is insufficient to survive a motion for summary judgment. See, e.g., Joseph v. First Judicial Dist. of Pa., No. Civ. A. 97-6703, 1999 WL 79056, at *5 (E.D. Pa. Feb. 2, 1999) ("[T]he fact that a younger person was hired to replace [plaintiff], while helpful in establishing a prima facie case of age discrimination, is not dispositive of whether an employer discriminated based upon age."); Heinemann v. Howe & Rusling, 529 F. Supp. 2d 396, 414 (W.D.N.Y. 2008). Even coupled with the evidence set forth above casting doubt on Defendant's proffered non-discriminatory reason, no reasonable factfinder could conclude, on the record before me, that the real reason for Plaintiff's discharge was age discrimination. In short, I find that Plaintiff's evidence of age discrimination is too thin, and her arguments regarding the same too underdeveloped, to withstand Defendant's motion for summary judgment. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's federal and state age discrimination claims is granted.

### III. CONCLUSION

For all of these reasons, Defendant's Motion for Summary Judgment is granted as to Plaintiff's age discrimination claims and denied as to Plaintiff's sex discrimination claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Virginia B. Finnegan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 07-405 |
| ) | |
| Ross Township, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Chief District Judge

### ORDER OF COURT

AND NOW, this 25th day of June, 2008, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant Ross Township's Motion for Summary Judgment (Docket No. 14) is GRANTED with respect to Plaintiff's claims for age discrimination in violation of the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act ("PHRA") set forth in Counts I and III of Plaintiff's Complaint. Defendant's Motion for Summary Judgment is DENIED in all other respects.

It is FURTHER ORDERED that counsel attend a pretrial/settlement conference scheduled for Tuesday, July 8, 2008, at 2:30 p.m. before the undersigned in Courtroom 3A of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania. Counsel shall have settlement authority, and parties are to be either present or available by telephone.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge